# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# DIVISION

| | |
|---|---|
| **ABDUL KARIM HASSAN,** | CASE NO. 4-11-cv-574 |
| **Plaintiff,** | |
| vs. | |
| **THE STATE OF IOWA, and MATT SCHULTZ, IN HIS OFFICIAL CAPACITY AS IOWA SECRETARY OF STATE,** | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| **Defendants.** | |

## TABLE OF CONTENTS

I. Preliminary Statement........................................................................................1

II. Statement of Alleged Facts ................................................................................2

III. Argument............................................................................................................3

   A. This court lacks jurisdiction in this matter: Plaintiff has failed to present a justiciable claim or controversy .....................................................4

   B. Plaintiff has failed to state a claim upon which relief may be granted.........6

IV. Conclusion .......................................................................................................17

## I.  PRELIMINARY STATEMENT

On or about December 1, 2011, Plaintiff filed a Complaint against the State of Iowa and Iowa Secretary of State Matt Schultz, in his official capacity. (Docket No. 1).

1

For reasons set forth in greater detail below, Defendants respectfully request that this Court grant their Motion to Dismiss in its entirety.

## II.     STATEMENT OF ALLEGED FACTS.[1]

Iowa requires candidates to submit an Affidavit of Candidacy in order to be placed on the Iowa General Election ballot. (Complaint at ¶ 26). That Affidavit requires candidates to attest that they are qualified to hold the office they seek. (See Plaintiff's exhibit 1).

Plaintiff Abdul Karim Hassan is a naturalized United States citizen. (Complaint at ¶ 11). He is running for the Office of President of the United States, despite the fact that, per the Constitution, only natural born citizens are eligible to hold that office. U.S. Const. Art. II § 1.

Plaintiff announced his candidacy for the Presidency in 2008. (Complaint at ¶ 13). Since that time, he has been campaigning in various ways, including the establishment and maintenance of a website, and the financing of a national advertising campaign related to said website. (See Complaint at ¶¶ 13, 15-19, 22).

On or about July 18, 2011, Plaintiff submitted an "Advisory Opinion Request" to Defendant Secretary of State Shultz, requesting an opinion on the following question: "Assuming [Plaintiff] satisf[ies] all requirements for a place on [Iowa's state] ballot for the 2012 presidential elections, either as an independent candidate or the nominee of a

---

1. The following "Statement of Alleged Facts" is derived primarily from the factual averments plead in the Complaint. The State recognizes that in adjudicating the motion to dismiss, the Court is to accept the factual allegations contained in the Complaint as true and that all reasonable inferences are drawn in favor of the non-moving party.  Lustgraaf v. Behrens, 619 F.3d 867, 873 (8th Cir. 2010).  However, the Court owes no deference to legal conclusions or "formulaic recitation[s] of the elements of a cause of action." Id. (quoting Bell Atlantic Corp. v. Twonbly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

2

party, whether [Plaintiff] would nonetheless be denied a place on said ballot because of [Plaintiff's] status as a naturalized American citizen?" (Complaint at ¶ 24; Plaintiff's Exhibit 2).

Plaintiff did not receive a response to this request. (Complaint at ¶ 25). The Complaint at issue followed.

### III.   ARGUMENT

Plaintiff's cause of action states that Defendants, in requiring him to submit the Affidavit of Candidacy as a precondition to ballot access in Iowa, have unconstitutionally discriminated against Plaintiff based on his national origin. He asks the court to declare that the Affidavit for Candidacy is invalid, and that Defendants have violated the United States Constitution in requiring the submission of this document. He further asks the Court to enjoin Defendants from further discrimination.

Plaintiff also asserts that the Natural Born Citizen Clause contained in Article II, section 1, of the United States Constitution has been trumped, abrogated, and implicitly repealed by subsequent Constitutional Amendments.[2] He asks for declaratory relief to this effect.

Defendants respectfully request that Plaintiff's claims be dismissed for the following reasons:  (1) The court lacks jurisdiction in this matter, as Plaintiff has failed to present a jusiticiable case or controversy; and (2) Plaintiff has failed to state a claim upon which relief may be granted.

---

[2] The clause reads, "[n]o person except a natural born Citizen… shall be eligible to the Office of President; neither shall any Person be eligible for that Office who shall not have attained the Age of thirty five Years, and been fourteen Years a Resident within the United States."

3

## A. This court lacks jurisdiction in this matter: Plaintiff has failed to present a justiciable case or controversy.

No actual case or controversy exists, therefore Plaintiff lacks standing to sue.

The following is a brief description of the process one must follow in order for one's name to be placed on the General Election Ballot in Iowa:

First, one must be nominated. Such nomination may occur by party nomination (via the primaries process). See Iowa Code § 54.5. To be eligible for party nomination, a candidate must sign an Affidavit of Candidacy. Iowa Code § 43.18. Alternatively, a candidate may be nominated by petition. Iowa Code § 45.1(1). To be nominated by petition, a candidate must submit a Nominating Petition signed by at least 1500 eligible electors, and an Affidavit of Candidacy (hereinafter "Nominating Papers").[3] Iowa Code §§ 45.1(1), 45.3. Nominating Papers for the offices of president and vice president must include the names of both nominees. Iowa Code § 45.1(7)(a). In addition, presidential and vice presidential candidates must submit a Certificate of Presidential Electors at the time of filing the Nominating Papers. Id.

For the 2012 General Elections, candidates nominated by petition must have their Nomination Papers submitted to the Secretary of State by 5:00 p.m. on August 17, 2012. Iowa Code §§ 45.4, 44.4.

---

[3] Of note: When a candidate achieves nomination through petition, the candidate's eligibility may be challenged by any eligible voter. Iowa Code §§ 45.4, 44.4(2). A candidate is then afforded a hearing on the subject of his eligibility before the Secretary of State, Auditor of State, and state Attorney General. Iowa Code §§ 45.4, 44.6; Iowa Administrative Code 721—1.4(1).

4

Because Plaintiff has not even begun to go down the above-described path, he lacks standing to sue.

"Under Article III of the United States Constitution, federal courts may only adjudicate actual cases or controversies." Constitution Party of S.D. v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011) (quoting Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008). "To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must establish that he or she has suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; that there is 'a causal connection between the injury and the conduct complained of'; and that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992)).

Plaintiff here has suffered no injury. Plaintiff has not been denied access to the ballot in Iowa for failure to submit an Affidavit of Candidacy. Indeed, Plaintiff has not attempted to submit any Affidavit of Candidacy (modified or otherwise) to the Secretary of State. Therefore Plaintiff has demonstrated no injury.

The only injury asserted is a conjectural, hypothetical one: that Plaintiff would be denied access to the ballot should he seek such access. However, Plaintiff has not demonstrated that, but for the complained-against Affidavit of Candidacy, he would be entitled to access the ballot. Plaintiff has taken no steps toward fulfilling the requirements for placement on the General Election Ballot. He has pled no facts indicating he has selected a running mate and created a Nominating Petition. He has pled no facts

indicating that he has obtained any of the required 1500 signatures. He has pled no facts indicating that he will be participating in partisan caucuses. Thus, Plaintiff has not demonstrated that the conduct complained of (the required Affidavit) caused the injury in question (lack of access to the ballot).

In addition, Plaintiff has not shown that the purported injury would be redressed by a favorable decision. As demonstrated in section III.B.1 below, this court cannot declare that the Natural Born Citizen Clause has been abrogated or impliedly repealed. Thus, even if Plaintiff obtained the relief he seeks with respect to the Defendants and the Affidavit of Candidacy, he would still be ineligible to hold the Office of the President of the United States.

For these reasons, Plaintiff has failed to present a justiciable case or controversy and lacks standing to sue.

### B. Plaintiff has failed to state a claim upon which relief may be granted.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); see also Libertarian Party of North Dakota v. Jaeger, 659 F.3d 687, 693 (8th Cir. 2011) (affirming district court's dismissal of plaintiffs' First and Fourteenth amendment and equal protection claims for failure to state a claim).

Plaintiff's cause of action employs a two-tiered analysis: Plaintiff first claims that it is unconstitutional, under the "Equal Protection Clause, the Citizenship Clause, and the

6

Privileges and Immunities Clause of the Fourteenth Amendment," for Defendants to deny Plaintiff access to the General Election Ballot in Iowa by virtue of his status as a naturalized citizen. Plaintiff's second claim is that the Natural Born Citizen Clause of the United States Constitution has been "abrogated and implicitly repealed" by subsequent amendments.  Because Plaintiff's second claim fails, his first claim must also fail.

*1.      The Natural Born Citizen Clause has not been trumped, abrogated, or impliedly repealed by subsequent Constitutional Amendments.*

Plaintiff asserts that the following Constitutional Amendments impliedly repeal the Natural Born Citizen Clause:

a. the Citizenship Clause ("All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside."), U.S. Const. Amend. XIV, § 1, cl. 1;

b. the Privileges and Immunities Clause ("No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."), U.S. Const. Amend. XIV, § 1, cl. 2; and

c. the Equal Protection Clause of the Fourteenth Amendment ("No state shall… deny to any person within its jurisdiction the equal protection of the laws."), id., as made applicable to the Federal Government through the operation of the due process clause of the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 499 – 500, 74 S.Ct. 693 (1954).

Plaintiff asks this Court to affirm his interpretation and announce the Natural Born Citizen Clause invalid and impotent as a Constitutional provision.

In support of this proposition, Plaintiff cites to two cases: McDonald v. City of Chicago, ___ U.S. ___, 130 S.Ct. 3020, 3050 (2010) (holding that the Due Process Clause of the Fourteenth Amendment incorporates the fundamental Second Amendment right to bear arms for the purposes of self-defense), and Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097 (1995) (holding that strict scrutiny applies to all race-based classification by the federal government).[4] Neither of these cases address when and how a Constitutional amendment may "abrogate" or "implicitly repeal" other Constitutional provisions. Indeed, it does not appear that any authority exists on this subject.

It could be argued that the case of Fitzpatrick v. Bitzer presents an example of implicit abrogation. 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In that case, the Court examined the relationship between the Eleventh Amendment[5] and section five of the Fourteenth Amendment,[6] ultimately holding that the latter limited the state sovereignty embodied in the former, and that Congress could, through legislation, subject states to suit to enforce the Fourteenth Amendment. Id. at 456. But Fitzpatrick v. Bitzer

---

[4] In support of his related positions, Plaintiff cites to United States v. Virginia, 518 U.S. 515 (1996), and Afroyim v. Rusk, 387 U.S. 253, 262 (1967) (holding that the Constitution did not grant Congress the ability to divest a naturalized citizen of his citizenship). The former is an equal protection case dealing with sex-based discrimination; the latter does not deal with the rights that accompany citizenship, it simply states that citizenship, once obtained, is protected. As such, neither case supports any of Plaintiff's positions.

[5] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

[6] "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. Amend. XIV, § 5.

did not set forth any principle or test for looking at Constitutional provisions in general. It is a case that very specifically addressed the Eleventh Amendment, and involved a direct conflict between two Constitutional provisions, both of which dealt with the rights of the states relative to the federal government. That is to say, the Eleventh Amendment states what the Federal Courts may not do vis-à-vis the states (haul them into federal court); the Fourteenth Amendment specifies what States may not do (violate the Fourteenth Amendment), and gives Congress the power of enforcement. The Fourteenth Amendment altered the respective powers of the federal and state governments. A "carving out" of state powers *necessarily* followed (if section 5 of the Fourteenth Amendment was to have any meaning), and that "carving out" included revisiting the scope of the Eleventh Amendment. See Fitzpatrick v. Bitzer, 427 U.S. at 454-56.[7]

In addition, the result in Fitzpatrick v. Bitzer was not a complete abrogation of a Constitutional provision. The Eleventh Amendment is alive and well today. See, e.g., See Alden v. Maine, 527 U.S. 706, 728-29, 119 S.Ct. 2240 (1999) (holding that Congress could not subject state to suit in state court without its consent).

Ultimately, Fitzpatrick v. Bitzer provides scant authority for Plaintiff's broad and novel proposition that a Constitutional provision can be impliedly and completely repealed. In contrast, the Constitution itself is quite clear on the process for making Constitutional changes. See U.S. Const. Art. V. The amendment process is primarily

---

[7] It is also worth noting that the Eleventh Amendment has always been interpreted through the lens of the prior concept of state sovereignty. See Alden v. Maine, 527 U.S. 706, 728-29, 119 S.Ct. 2240 (1999). The Fourteenth Amendment was ratified with the consent of the states. See U.S. Const. Art. V. And the concept of state sovereignty acknowledges that a state may be subject to suit where it consents. See Alden, 527 U.S. at 728-29.

vested in the legislative branches of both the Federal and State governments. See id. The judicial branch has no role in amending the Constitution. Yet, in essence, Plaintiff now asks the Court to repeal a portion of the Constitution that has not been explicitly repealed through the Amendment process.

Other courts have found this approach objectionable. In addressing a constitutional challenge to the Electoral College system (and dismissing the complaint for failure to state a claim), the court for the Eastern District of New York stated "the Court's role is to interpret and enforce the Constitution. It is not empowered to strike the document's text on the basis that it is offensive to itself or is in some way internally inconsistent …. [i]n other words, the electoral college cannot be questioned constitutionally because it is established by the Constitution." New v. Ashcroft, 293 F.Supp.2d 256, 259 (E.D.N.Y. 2003) (internal quotations omitted); see also Hitson v. Baggett, 446 F.Supp. 674, 676 (D. Ala.1978) ("The discrimination of which plaintiffs complain (if it is discrimination) is a product of the constitutional mandate that our president be elected through an 'Electoral College.' As such, it is a type of 'discrimination' specifically sanctioned by the Constitution. Thus, while this 'discrimination' may be considered by some to be unfair, it is hardly 'unconstitutional.'") (internal citations omitted).

Regardless of whether a Constitutional provision may be impliedly repealed, there are no grounds for such repeal in the instant case. None of the Constitutional provisions cited by Plaintiff have any bearing on the Natural Born Citizen Clause.

**The Citizenship Clause does not have a bearing on the Natural Born Citizenship Clause.**

*"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside."*

This clause "unambiguously overruled" Dred Scott,[8] as the holding in that case rested on the premise that black persons were not United States "citizens" under the Constitution. McDonald, 130 S.Ct. at 3060 (J. Thomas, concurring in part). It cannot be asserted that this clause has any effect on the Natural Born Citizen Clause, as that clause does not speak to *who* may be considered citizens: it speaks to *which* citizens are eligible to serve as President.

**The Privileges and Immunities Clause does not have a bearing on the Natural Born Citizen Clause.**

*"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."*

The Fourteenth Amendment "did not add to the privileges and immunities of a citizen. It simply furnished an additional guaranty for the protection of such as he already had." Minor v. Happersett, 88 U.S. 162, 171, 22 L.Ed. 627, 21 Wall. 162 (1874) (holding that women, although citizens, were not guaranteed the right of suffrage by the Constitution).[9] Clearly, not all citizens possess the right to hold the Office of the United States President. Thus, it is not a privilege or immunity of citizenship. See id. at 178

---

[8] Dred Scott v. Sandford, 19 How. 393, 15 L.Ed. 691 (1857).
[9] Women only gained the right to vote through Constitutional amendment in 1920. See U.S. Const. Amend. XIX. In declining to include the right to vote in the privileges and immunities of citizenship, the court stated that "[i]f the law is wrong, it ought to be changed; but the power for that is not with us." Id. at 178.

("[T]he constitution, when it conferred citizenship, did not necessarily confer the right of suffrage.").

The limited effect of the Privileges and Immunities clause of the Fourteenth Amendment is emphasized in McDonald. In the plurality opinion of McDonald, the Court declined to revisit the holding in the Slaughter-House Cases regarding the Privileges and Immunities Clause: i.e., that Clause "protects only those rights 'which owe their existence to the Federal government, its National character, its Constitution, or its laws.' [O]ther fundamental rights—rights that predated the creation of the Federal Government and that 'the State governments were created to establish and secure' [are] not protected by the Clause." Id. at 3028 (quoting the Slaughter-House Cases, 83 U.S. 36, 76, 78, 16 Wall. 36, 12 L.Ed. 394 (1894)) (internal citations omitted). As a result of this narrow interpretation, "the Court has held that the [Privileges and Immunities] Clause prevents state abridgment of only a handful of rights, such as the right to travel, that are not readily described as essential to liberty." Id. at 3061 (J. Thomas, concurring in part) (internal citations omitted).

Plaintiff has cited to no authority supporting the contention that the right to hold the Office of the Presidency is a privilege or immunity of citizenship. In light of the above, it is clear that it is not. Thus, the Privileges and Immunities Clause does not have any bearing on the Natural Born Citizen clause.

**The Equal Protection Clause does not have a bearing on the Natural Born Citizen clause.**

*"No state shall... deny to any person within its jurisdiction the equal protection of the laws."*

It has been established that statutory classifications based on national origin are inherently suspect and subject to strict scrutiny. See, e.g., Graham v. Richardson, 403 U.S. 365, 91 S.Ct.1848 (1971). It has never been established that Constitutional provisions may be subject to strict scrutiny review and thereby held invalid. (On the contrary, the only Constitutional way to change the Constitution is via the procedures set forth in Article V.)

The Equal Protection Clause demands that individuals be treated equally by the federal and state governments, regardless of national origin. As the Fourteenth Amendment provides, "[n]o State shall… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. After Bolling, neither shall the Federal Government deny any person within its jurisdiction the equal protection of the laws. See Bolling, 347 U.S. at 499 – 500; Adarand Constructors, Inc., 515 U.S. at 215-18 (discussing how the decision in Bolling resulted in "imposition on the Federal Government… an obligation equivalent to that of the States").

As the Court in Bolling pointed out, "[a]s long ago as 1896, this Court declared the principle 'that the constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination *by the general government*, or *by the states*, against any citizen because of his race.'" Bolling, 347 U.S. at 499 (quoting

Gibson v. Mississippi, 162 U.S. 565, 591, 16 S.Ct. 904 (1896)) (emphasis added). The Constitution is not the government: It is the source and designator of all government powers and functions. It exists above and before the government. Thus the Equal Protection Clause, even when applied through the Fifth Amendment, does not apply to the Constitution itself. And so, although the *concepts* espoused in the two clauses appear to be at odds with one another, there is no *actual* conflict between the Equal Protection Clause and the Natural Born Citizen Clause. The former simply does not apply to the latter.

Therefore, even if Fitzpatrick v. Bitzer can be read as precedent for Plaintiff's radical argument that the court may repeal a Constitutional provision, that case is not applicable here. As demonstrated above, the Constitutional provisions cited by Plaintiff do not conflict with the Natural Born Citizen Clause in the way the Constitutional provisions at issue in Fitzpatrick v. Bitzer conflicted. The Fourteenth Amendment and the Natural Born Citizen Clause have, in fact, coexisted without incident since 1868.

For the above reasons, the Natural Born Citizen Clause has not been abrogated or repealed by the Fourteenth Amendment.

*2.     The Affidavit for Candidacy—and Iowa Code sections 43.18 and 45.3 requiring such Affidavit—are not unconstitutional.*

The Iowa Affidavit for Candidacy requires the signing candidate to affirm that s/he "will be qualified to hold [the office sought] and if [s/he is] elected, [s/he] will qualify by taking the oath of office." (Plaintiff's Exhibit 1).

14

Neither the Affidavit itself nor the Iowa Code sections requiring its submission define the qualifications for the Office of the President of the United States. Those qualifications are set forth in the United States Constitution, and include the requirement that the President be "a natural born citizen." U.S. Const. Art. II, § 1.

Plaintiff is, by the terms of a Constitutional provision that has not been repealed, ineligible to hold the office of the Presidency.

The court has recognized that not all potential candidates have a right to be placed on a ballot. In <u>Manifold v. Blunt</u>, a new political party's presidential and vice-presidential candidates were not allowed to appear on Missouri's General Election Ballot because they had not presented their final list of presidential electors by the deadline established by statute. 863 F.2d 1368, 1369-70 (8th Cir. 1988). The Missouri statute required new parties to submit this list several months before the established parties. <u>Id.</u> at 1372. The new party challenged the state's actions on equal protection grounds. <u>See id.</u> at 1372. The Court held that the statute did not impose an unreasonable burden on new parties because there were compelling state reasons for the disparate treatment. <u>Id.</u> at 1374-1375. Namely, the requirement was tied to the State's interest in "assuring the voters that the candidate is qualified to serve and that their vote for that candidate is meaningful." <u>Id.</u> at 1374.

In <u>Libertarian Party of North Dakota v. Jaeger</u>, three Libertarian Party candidates won in that Party's primaries in 2010. 659 F.3d at 692. By statute, in order to be listed on the General Election Ballot, party nominees had to obtain a minimum number of votes in primary elections. <u>Id.</u> None of the three candidates obtained enough votes, and they were

15

excluded from the ballot. Id.  The candidates challenged the state's action on First Amendment, Fourteenth Amendment, and Equal Protection grounds. Id.

The Jaeger court affirmed that "[a] state has a compelling interest in 'protecting the integrity of their political processes from frivolous or fraudulent candidacies, in insuring that their election processes are efficient, [and] in avoiding voter confusion caused by an overcrowded ballot….'" Id. at 698 (internal quotations omitted); Clements v. Fashing, 457 U.S. 957, 965, 102 S. Ct. 2836, 73 L.Ed.2d 508 (1982). The court therefore held the statue which barred the candidate's access to the ballot was Constitutional. Jaeger, 659 F.3d at 698.

Here, Plaintiff's ineligibility does not lie in his failure to fulfill a state-specified pre-requisite. Here, Plaintiff is ineligible because he does not meet the Constitutional requirements for the Office. It is impossible for him to ever hold the office he seeks.[10] Thus, the State's interest in "assuring the voters that the candidate is qualified to serve and that their vote for that candidate is meaningful" is even more present here than in the above-referenced cases.

The Iowa Affidavit of Candidacy is a valid, Constitutional means of protecting this compelling state interest.

In sum, no plausible claim has been made that the Natural Born Citizen clause is unconstitutional, or has been impliedly repealed. As such, it is not unconstitutional for Iowa to require candidates to attest that they meet the requirements of that Clause.

Therefore, Petitioner has failed to state a claim upon which relief may be granted.

---

[10] Unless and until the Constitution is amended.

16

## IV. CONCLUSION.

For the reasons set forth herein, Defendants respectfully request this Court grant their Motion to Dismiss.

                                      THOMAS J. MILLER
                                      IOWA ATTORNEY GENERAL

                                      /s/ JEFFREY C. PETERZALEK
                                      Jeffrey C. Peterzalek AT0006274
                                      Assistant Attorney General
                                      Hoover Building, Second Floor
                                      Des Moines, Iowa 50319
                                      Telephone: 515-281-4213
                                      Facsimile: 515-281-7551
                                      E-mail: jpeterz@ag.state.ia.us
                                      ATTORNEY FOR DEFENDANTS

Copy to:

Abdul K. Hassan, (Pro Se)
215-28 Hillside Avenue
Queens Village, NY 11427


Remaining parties were served electronically

---

**PROOF OF SERVICE**

The undersigned hereby certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on 12/27/11.

☒ U.S. Mail     ☐ Fax
☐ Hand Delivery     ☐ Other:
☐ Express Mail

Signature: /s/ Roxanne Dales

---